***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with certain modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, which has jurisdiction over the parties and the subject matter. *Page 2 
2. An employee-employer relationship existed between the parties as of February 28, 2005.
3. On the date of injury by accident, the employer was a duly-qualified self-insured. Sedgwick James (CMS) was the administrator of claims at the time of the injury by accident.
4. The average weekly wage of Plaintiff-Employee was $249.68, resulting in a compensation rate of $166.45.
5. The following documents were received via stipulation of the parties:
 (a) The Pre-Trial Agreement, which was received as Stipulated Exhibit 1;
 (b) Additional documents, which included Industrial Commission filings, medical records, and medical case manager reports, were received and collectively marked as Stipulated Exhibit 2;
 (c) Stipulated Exhibit 3, a two-page note from Carolina Sports Medicine Orthopaedic Specialists;
 (d) Stipulated Exhibit 4, two-page note from Atlantic Orthopedics;
 (e) Stipulated Exhibit 5, Form 61.
6. A statement of "Provider Outstanding Balances" was marked as Plaintiff's Exhibit 6 and received.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff worked for Defendant for about three years prior to her accident. As a Beauty Advisor, her duties included unloading trucks, setting up the stores, and preparing planograms. *Page 3 
2. On February 28, 2005, Plaintiff arrived at Defendant's place of business and as she was exiting her vehicle in the parking lot, she slipped on ice and fell. The parties do not dispute this incident and Defendant has paid for some past medical benefits and lost time due to this compensable injury.
3. Plaintiff initially treated with Glenn Weckel, D.C., on March 8, 2005. She complained to the chiropractor of right-sided low back pain and right lateral hip pain. Dr. Weckel diagnosed a soft tissue sprain/strain and contusion. Plaintiff treated with Dr. Weckel through late May 2005.
4. Plaintiff was referred by CMS to Dr. Cromer with Occupational Medicine Specialists beginning April 4, 2005. Dr. Cromer diagnosed right trochanteric bursitis, which he treated with an injection and pain relievers. Because Plaintiff continued to experience pain, he referred her to Dr. Jon Miller.
5. On or about May 20, 2005, Plaintiff presented to Dr. Jon Miller of Atlantic Orthopedics. Plaintiff reported to Dr. Miller sharp, stabbing, constant pain over the greater trochanter area, worse at night, and while walking, driving, and weight bearing. Dr. Miller diagnosed trochanteric bursitis and recommended physical therapy. Due to lack of improvement in Plaintiff's pain, Dr. Miller referred Plaintiff to Dr. Francis Pecoraro for pain management.
6. On July 12, 2005, Plaintiff's chief complaints to Dr. Pecoraro included right hip pain in the posterolateral aspect of the right buttock radiating into the posterior middle of the upper leg. Dr. Pecoraro diagnosed right hip pain of unclear etiology and initially treated Plaintiff with pain medication. On July 28, 2005, Dr. Pecoraro noted significant improvement with 5 mg of hydrocodone. *Page 4 
7. On August 1, 2005, Dr. Pecoraro performed an intra-articular corticosteroid injection of Plaintiff's right hip. The medical records show that on follow-up, Plaintiff reported feeling "`great'" with significant pain relief from the injection. Dr. Pecoraro explained in his deposition that Plaintiff's immediate relief of pain from the injection showed hip arthralgia, which meant that the pain Plaintiff was experiencing was coming from the joint of the hip.
8. Due to the return of Plaintiff's hip pain as of her October 3, 2005 follow-up visit, Dr. Pecoraro referred Plaintiff to Dr. Walter Frueh in the same practice for an opinion regarding eventual hip replacement. Dr. Frueh examined Plaintiff on November 2, 2005. Upon examination, Dr. Frueh noted no contractures, but a significant area of tenderness to palpation over the lateral aspect of the right greater trochanter, which was consistent with her pain. Dr. Frueh diagnosed trochanteric bursitis. Per Dr. Frueh's testimony, trochanteric bursitis is difficult to treat with surgery, and thus he did not recommend surgery for Plaintiff.
9. On her December 15, 2005 visit to Dr. Pecoraro, Plaintiff reported occasional right hip pain with radiation into her right foot, as well as back pain on end range extension and rotation to the right. The back pain continued through subsequent visits as Dr. Pecoraro investigated whether this new symptom was related to the original hip pain. Dr. Pecoraro continually recommended a lumbar MRI.
10. Dr. Frueh, after examining Plaintiff on January 18, 2006, for this new complaint, diagnosed sciatica not related to her prior hip complaints and recommended conservative treatment.
11. On April 13, 2006, Plaintiff underwent an MRI of her lumbar spine, which was normal. On April 18, 2006, Dr. Pecoraro was still of the opinion that her problem was her hip. Dr. Pecoraro treated her with a greater trochanteric bursa injection. *Page 5 
12. On May 16, 2006, Plaintiff reported substantial relief from her pain and Dr. Pecoraro noted her to be "happy," and "very pleased with her progress." Dr. Pecoraro placed Plaintiff at maximum medical improvement (MMI) and warned her not to bump her hip. He planned to see her again within two months.
13. As Dr. Pecoraro explained in his deposition, MMI meant to him that the patient's condition is static and will not improve from further treatment. However, Plaintiff does need pain medicine for the management of her condition. Dr. Pecoraro noted that Plaintiff could work full time in her usual duties.
14. Plaintiff presented to Dr. Pecoraro on June 12, 2006, due to a flare-up from stepping off a ladder. Dr. Pecoraro gave Plaintiff a trochanteric bursa injection. When she was next seen on July 17, Plaintiff reported that the injection had helped her significantly. Dr. Pecoraro noted that Plaintiff had complained of hip pain as well as back pain for many months since her accident and had been walking with an antalgic gait. Dr. Pecoraro stated that a chronic antalgic gait most certainly can lead to trochanteric bursa irritation.
15. On August 29, 2006, Plaintiff received another trochanteric bursa injection.
16. Plaintiff voluntarily left her employment with Defendant. In August 2006, she began working with Dollar General as an assistant manager. Her duties primarily were stocking merchandise and running the cash register. About thirty percent of her duties involved stocking. As an assistant manager, Plaintiff was not required or even allowed to unload merchandise from trucks.
17. In stocking, the merchandise was placed in a rolling cart approximately six feet tall and three-and-a-half feet wide to be pushed by an employee to the shelf for stocking. This cart, loaded with merchandise, can weigh up to two hundred pounds. Once in place, the *Page 6 
merchandise would be taken off the cart in cases and placed on the floor. The weight of the cases would vary by product, up to 40 pounds. The merchandise is then lifted from the case and placed on the shelf.
18. Plaintiff continued to work for Dollar General into September 2006. She left her employment there because she was not happy with the conditions or her manager. She did not leave because the job aggravated her hip or back pain. Per her testimony, Plaintiff did less heavy and strenuous lifting at Dollar General than she had done while employed with Defendant. While working for Defendant, she had to unload trucks, which required much heavier lifting.
19. On September 28, 2006, Plaintiff presented for follow-up by Dr. Pecoraro. She was maintained on hydrocodone 5 mg for pain and told to return in one month.
20. On December 8, 2006, Plaintiff presented to Jeffrey Tyler, PA-C, of Atlantic Orthopedics for follow-up. Her pain medications were continued. On January 8, 2007, Plaintiff received another trochanteric bursa injection from Mr. Tyler.
21. At some point, CMS denied further medical treatment to Plaintiff. A Form 61 dated January 10, 2007, was filed. CMS took the position that Plaintiff's ongoing pain was caused by her duties at Dollar General. This was apparently based upon a passing comment in the medical records, but was not supported by medical testimony post-hearing.
22. Due to the denial of continuing medical treatment, Plaintiff sought treatment on her own at the New Hanover Community Health Center on February 12, 2007. Trochanteric bursitis was assessed and Plaintiff was given a prescription of Lorcet 5/500mg for pain.
23. On March 8, 2007, Plaintiff returned to New Hanover Community Health Center for follow-up of consistent right hip pain. At that time, she requested a refill of her medicine and insisted on having an MRI of her hip, which was ordered. The March 14, 2007 MRI showed *Page 7 
mild distal gluteus medius tendinopathy at the greater trochanter without frank trochanteric bursitis. Plaintiff was referred to Dr. Mark C. Grieb, a specialist in anesthesia and pain management at Atlantic Pain Medicine.
24. Dr. Grieb first examined Plaintiff on April 17, 2007, at which time he went over the findings from the lumbar spine MRI regarding the right L5-S1. Plaintiff reported to Dr. Grieb that the injections she received from Dr. Pecoraro in the bursa did not provide lasting relief of her hip pain, in contradiction to what she reported to Dr. Pecoraro. However, she also reported that one injection, which Dr. Grieb interpreted from her description to be an intra-articular hip injection, provided about a month of pain relief. On exam, Dr. Grieb found marked tenderness over the trochanteric bursa. He assessed right lateral thigh pain, possible hip joint arthropathy, possible L-5 radiculopathy, and failed treatment for trochanteric bursitis.
25. On April 27, 2007, Dr. Grieb performed an L4-5 epidural steroid injection. On May 11, 2007, Plaintiff had a right intra-articular hip joint injection performed by Dr. Grieb. Plaintiff reported that this gave her pain relief. Based upon his objective findings, Plaintiff's pain reports, and the relief from injections, Dr. Grieb diagnosed Plaintiff with a right intra-articular hip joint problem, or hip joint arthropathy. He referred Plaintiff to orthopaedic surgeon Dr. David Esposito with Carolina Sports Medicine Orthopaedic Specialists for further assessment.
26. Dr. Esposito examined Plaintiff on May 29, 2007. At that time, Dr. Esposito was aware of the various assessments by Dr. Grieb and Dr. Frueh. Dr. Esposito ordered AP and lateral views of the hip, which showed satisfactory anatomic alignment. A June 18, 2007 MR arthrogram did not show a focal labral tear or any arthritis. However, Plaintiff's pre-procedure pain of 8 out of 10 decreased to 0 out of 10 after intra-articular administration of Marcaine. *Page 8 
27. At Plaintiff's June 28 visit, Plaintiff was given another intra-articular injection, which gave her good pain relief. Dr. Esposito assumed from this result that more likely than not, the pain was coming from inside the hip.
28. Dr. Esposito assessed Plaintiff with a combination of hip joint arthropathy and trochanteric bursitis. As Dr. Esposito explained, people with arthritic hip problems often develop trochanteric bursitis as well, due to changes in their gait. This testimony is consistent with the notes of Dr. Pecoraro, indicating that such trochanteric bursitis can develop from antalgic gait. Dr. Esposito recommended an arthroscopic surgery to determine the true problem. Plaintiff has not had surgery due to her inability to pay for the procedure.
29. Plaintiff testified that the injections she received from her physicians relieved her pain temporarily, but once they wore off, she would experience a flare-up of pain.
30. All the treating physicians have found Plaintiff to be credible in her reports of hip pain and none have reported any signs of malingering. Although she has been somewhat inconsistent as to whether injections have been helpful, it appears, per Dr. Esposito, that her pain may be originating from two different areas of the hip, which could lead to unresolved pain if only one area is treated. The Full Commission finds Plaintiff's testimony with respect to her hip injury, ongoing pain and symptoms, and course of medical treatment to be credible.
31. Based upon the testimony of the physicians, the Full Commission finds that Plaintiff's February 25, 2005 accident, when she slipped and fell on ice either caused or significantly aggravated her hip condition, resulting in an intra-articular hip joint problem and trochanteric bursitis. Although Plaintiff has been somewhat inconsistent in her reporting of whether injections for the bursitis have given pain relief, the greater weight of the evidence, including her reports to her treating physicians, indicate that the injections have helped her at *Page 9 
least temporarily. As Dr. Pecoraro and Dr. Esposito both noted, the two diagnoses of arthritis and bursitis often are related, with the gait change from hip joint pain causing bursitis.
32. The evidence fails to support Defendant's position that Plaintiff's current problems are related to her subsequent employment at Dollar General. Although there may have been a reference to her job there in the medical notes, the physicians agree that her hip pain is traceable to and was caused or aggravated by her fall in February 2005. Prior to this fall, Plaintiff was asymptomatic. Her subsequent employment has not been established to be a significant contributing or aggravating factor.
33. The Full Commission finds that Plaintiff is not at MMI with regard to the need for medical treatment. She is in need of pain management, as all the physicians agree. There is also a possibility that further arthroscopic surgery could better assess her condition and lead to a more comprehensive treatment plan for her hip pain.
34. At the time of hearing before the Deputy Commissioner, Plaintiff had been working for Home Depot since the end of July 2007. She works in the hardware department in sales and stocking. She earns $8.50 per hour and works about 20 to 28 hours per week.
35. Defendant appealed the Deputy Commissioner's Opinion and Award, and the Full Commission affirms said decision. The Full Commission has received an affidavit from counsel for Plaintiff which documents 23 hours spent representing Plaintiff in the instant appeal.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following: *Page 10 
 CONCLUSIONS OF LAW
1. On February 28, 2005, Plaintiff sustained a compensable injury by accident when she slipped on ice and fell in the parking lot while exiting her car when coming to work, injuring her right hip. N.C. Gen. Stat. § 97-2(6).
2. The evidence fails to establish that Plaintiff's subsequent employment with Dollar General was a significant contributing or aggravating factor to her hip problems, but rather establishes, by competent expert medical opinion, that the hip problems are related to the fall of February 28, 2005. N.C. Gen. Stat. § 97-2(6); Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980).
3. Defendant is responsible for payment of all medical expenses incurred for treatment that tends to effect a cure, give relief and lessen Plaintiff's period of disability, as related to her compensable right hip injury. Plaintiff is in need of ongoing pain medication for her hip problem. She is also a possible candidate for arthroscopic surgery to better assess her hip condition, as recommended by Dr. Esposito. Defendant shall be responsible for payment of such ongoing medical expenses. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. In the discretion of the Full Commission, counsel for Plaintiff is entitled to have Defendant pay an attorney's fee in the amount of $3,450.00. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay for all reasonably necessary medical treatment incurred or to be incurred for Plaintiff's right hip injury for so long as such evaluations, examinations, and *Page 11 
treatments may reasonably be required to effect a cure, provide relief, or tend to lessen the period of disability, when bills for the same have been approved in accordance with the provisions of the Act.
2. Defendant shall pay to counsel for Plaintiff an attorney's fee in the amount of $3,450.00 for defending this matter on appeal to the Full Commission.
3. Defendant shall pay the costs.
This the 19th day of March 2009.
S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1